CORNELIUS H. OWINGS AND FRANCIS R. GRIFFITH, EXECUTORS OF NICHOLAS OWINGS, *vs.* JOHN B. EMERY AND CYRUS GAULT.—*December,* 1847.

On the 11th June, 1840, *N. O.* leased to *E. & G.* a *granite quarry*, known by the name of *F. R. with the license of quarrying* and getting away stone, for the term of six years, from 10th November following, and the lessees went into possession. On the 25th July, 1836, *B. & C.* who had title, leased to *D.* all their estate and interest, being two-third parts *of all that lot*, within the farm of *N. O.* called *F. R.*, for the term of five years, which before the action brought, came to *E. & G.* by assignment, as to one-half. The metes and bounds in both leases were the same. In an action by *N. O.* for the rent due 1st Nov. 1841, under the lease of June, 1840. *Held:*

1st. That the lease of 1836 was a grant of the superficies of the soil, and did not pass a right to the quarry, as it was not opened at the date of that lease.

2d. That this case is not one of conflicting leases; the deed of 1836 being a lease of the surface of the soil; that of 1840 a lease or license to quarry stone.

3d. If a man hath land, in part of which there is a mine open, and he leases the land, the lessee may dig the mine; as the mine is open, and he leases all the land, it shall be intended that his interest is as general as his lease.

4th. Making of new mines is waste, unless the lease is of all mines on the land.

5th. A declaration in a lease dated in 1840, that a quarry " had been recently or a short time ago, possessed and worked by *W.*" cannot be understood as meaning that the quarry was opened four years previously.

APPEAL from *Baltimore* County Court.

This was an action of *debt,* brought by the appellants against the appellees, to recover $500 rent on a lease, made by *Nicholas Owings* on the 11th June, 1840, to the appellees, for the term of six years. The lessees were to enter the demised premises on the 11th November, 1840, and the rent claimed was for the *first* year. The defendants pleaded *nil debet,* with leave to give any special matter in evidence which might be pleaded in bar, upon notice, &c.

1ST EXCEPTION.—At the trial, the plaintiffs read in evidence the lease, as follows:

"This indenture, made this 11th June, 1840, between *Nicholas Owings,* of, &c. and *John B. Emery* and *Cyrus Gault,* witnesseth, that the said *N. O.* in consideration of, &c. hath demised, &c. and by, &c. doth demise, &c. unto the said *E. & G.* the granite *quarry and quarries, situate in Baltimore Co. near the Patapsco river or falls, on land of said Owings, called and known by the name of 'Fox Rock, or Fox Rock Quarry,' being the same which was, or were lately possessed and worked by Wood & Co. and now by Joseph Yager & Co.* and which are more particularly described, &c.; *and also the leave, license, right and privilege of quarrying,* getting out, working and carrying away granite stone from said quarry or quarries, to the use and benefit of said *E. & G.* &c. for the term of six years, from and immediately after the 10th November next ensuing the date hereof, in such quantities, from time to time, as the said *E. & G.* may have occasion to use in their business, or may choose to quarry—not less than forty thousand cubic feet in each year of the said term—together with, &c. the use of so much, &c. yielding and paying to the said *N. O.* his, &c. for the use of the premises and the stone to be quarried and got out of said quarry or quarries, during said term of six years, one cent and one quarter of a cent for each and every cubic foot of stone which shall or may be so quarried and got out therefrom by the said *E. & G.*—they hereby binding themselves to quarry and get out at least forty thousand cubic feet in each and every year during said term, or to pay

for that quantity at the rate aforesaid, if they fail to quarry and get out that quantity, and all over to be paid for, &c. And the said *N. O.* for, &c. doth hereby covenant with the said *E. & G.* that they, the said *E. & G.* upon the payment of the said rent or quarry leave, and performance of the covenants above reserved and mentioned, on their part to be paid and performed, shall and may quietly possess, use, occupy and enjoy the said *Fox Rock Quarry* and premises, included within the following lines, viz: *commencing at, &c. a stone marked No. 1, and running east to a white oak tree, marked with three notches; then north-east to a stone marked No. 2; then north to a stone marked No. 3; then west to a stone marked No. 4, and then to the place of beginning,* for the purpose of freely quarrying, getting out, working and carrying away stone therefrom, at their discretion as aforesaid, during," &c.

The plaintiffs further proved that the defendants were in possession of the demised premises during the years 1840 and 1841, &c.; that the plaintiffs were executors of *N. O.* before the bringing of this suit,—and that he died in December, 1841.

The defendants then read in evidence the notice served on plaintiffs counsel under the leave in this cause, of the matters of defence relied on by them, and a lease dated 25th July, 1836, from *Beale Owings* and *Cornelius H. Owings,* who it is admitted had title at said date to make such lease, to *Caleb D. Owings, for all their estate and interest—being two-third parts of and in, all that piece or lot of ground within the limits of the farm of Nicholas Owings, being in Baltimore Co. which lot of ground is called Fox Rock, and which was granted and conveyed by said Nicholas Owings to the said Beale, Cornelius H. and Caleb D. Owings,* by indenture, bearing date on the 20th November last past, and recorded, &c. and which is contained within the description following—that is to say: beginning for the same at a stone marked No. 1, standing on the outline of a tract of land, called "*Wells and Howard's First and Second Adventure,*" being a division line between the lands of the said *Nicholas Owings* and a certain *Noah Worthington,*

and being south of *Swett & Co's* rail-road, and running thence east to a stone marked No. 2; then running north to a stone marked No. 3, planted in an old field, known by the name of *Frogs' Field;* then west to said division line, between the lands of the said *Nicholas Owings* and *Noah Worthington,* running to a stone marked No. 4,—and then south, running with said division line, to the place of beginning; containing six acres, more or less—to have, &c. the two-thirds of the piece or parcel of ground hereby intended to be demised unto the said *C. D. O.* his, &c. for the term of *five* years, accounting from the 25th July, 1836, and thence next ensuing, yielding and paying therefor yearly, and every year during said term, to the said *B. O.* and *C. H. O.* &c. the rent or sum of six cents, if demanded, and no more.

The defendants also read in evidence the assignment of said lease, dated the same day, from said *Caleb D. Owings* to *Charles Wood, Joseph Yager, John D. Stewart* and *Edward Green.* And offered to prove by said *Yager,* that said *Caleb* was a partner with said *Wood, Yager* and *Stewart,* but withdrew from said firm about 1839; that on 11th June, 1840, the defendants were the owners of one undivided half part in interest in said lease, dated 25th July, 1836, and said *Yager* of the other half part; and that the defendants and said *Yager* remained possessed of said demised premises, under and by virtue of said lease of 25th July, 1836, until its expiration in July, 1841. The defendants offered all said evidence for the purpose of showing that the lease now sued on did not take effect until 25th July, 1841.

Whereupon the plaintiffs, by their counsel, objected to said offered evidence, and every part thereof; but the court, (Purviance, A. J.) overruled said objection, and admitted the said offered evidence, and every part thereof, to be given to the jury, *in reduction of the amount claimed in this action.* The plaintiffs excepted.

The other exceptions are sufficiently stated in the opinion of this court.

The verdict and judgment of the County Court being against the plaintiffs below, they appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By PARRAN and BRENT for the appellant, and

By HINKLEY and NELSON for the appellees.

MARTIN, J., delivered the opinion of this court.

In this case an action of debt was instituted in *Baltimore* County Court, by the appellants against the appellees, to recover the sum of $500, the amount alleged to be due on the 10th November, 1841, for one year's rent of stone quarry called the *Fox Rock Quarry*, which had been demised to the appellees by *Nicholas Owings*, in an indenture bearing date the 11th June, 1840, for the period of six years, to take effect from the 10th November, 1840.

The defendants pleaded to this action *nil debet*, and under the leave granted to rely upon any defence that could be specially pleaded, gave notice that they would offer in evidence a lease of the 25th July, 1836, for the *Fox Rock Quarry*, made by *Beale Owings* and *Cornelius Owings* to *Caleb D. Owings*, and the assignment of two-thirds parts thereof by *Caleb D. Owings* to *Wood & Yager*, and which was outstanding, unexpired, and in full force, at the date of the lease on which this action was brought, so that the lease of the 11th June, 1840, could not commence until the lease of the 25th July, 1836, had terminated or expired.

At the trial below, the plaintiffs offered in evidence the lease of the 11th June, 1840, and proved generally that the defendants were in the occupation of the demised premises in 1840 and 1841, and in this posture of the case, and in the absence of all explanatory or defensive testimony, the defendants were to be regarded in legal contemplation, as in the possession and enjoyment of the quarry in question, under the lease of the 11th June, 1840, and were therefore disabled from impugning or

controverting the title of their lessor, *Nicholas Owings,* the appellants' testator.

At this stage of the cause, the defendants, for the purpose of showing that they had been evicted or interrupted in their right of possession as lessees of the *Fox Rock Quarry,* under the lease of the 11th June, 1840, and that they were not responsible for rent prior to the expiration of the lease of the 25th July, 1836, offered in evidence the lease of the 25th July, 1836, in connection with the oral testimony of *Yager,* who proved that on the 11th June, 1840, the defendants were the owners of the undivided half part in interest in the lease of the 25th July, 1836, and that the said *Yager* was the owner of the other half part, and that the defendants and said *Yager* remained possessed of the said demised premises under and by virtue of the lease of the 25th July, 1836, until its expiration in July, 1841. The plaintiffs below objected to the admissibility of this evidence, but the objection was overruled and the evidence received. And the testimony offered by the plaintiffs, as exhibited in the second, third and fourth bills of exceptions, having been rejected, upon the application of the defendants, the court instructed the jury, that upon the evidence aforesaid the plaintiffs could not recover any rent stipulated to be paid anterior to the 25th July, 1841, because the evidence, if believed by the jury, shows such an interruption of the possession by the defendants under the lease now in suit, as precludes the plaintiffs from recovering any rent anterior to the 25th July, 1841.

The counsel for the plaintiffs excepted to the ruling of the court with respect to the admissibility of the testimony offered by the defendants in the *first* exception, and to the instruction given by the court to the jury as exhibited in the *fifth* exception. Both the exceptions raised substantially the same question. The exposition of the law of the case, to be found in the opinion of the court, as expressed in the *fifth* exception, was predicated upon the evidence introduced under the *first* exception, and if the court erred in admitting the testimony presented by the plaintiffs in the *first* exception, their instruction to the

jury was necessarily erroneous, as under such circumstances there would be no evidence to sustain it.

It is apparent from the statement we have thus given of the pleadings in this cause, that the claim interposed by the defendants for a reduction and apportionment of the rent can only be maintained upon the ground that a case was presented of conflicting leases, and the point made by the counsel for the plaintiffs on this branch of the argument was, that there was no incompatibility between the lease of the 25th July, 1836, and the lease of the 11th June, 1840, because the first lease operated only as a grant of the superficies or surface of the soil, and did not pass a right to the quarry, which was for the first time demised to the defendants by the lease of the 11th June, 1840.

In *Saunders'* case, reported in 5 *Coke's Rep.* 22, it was adjudged:—

1st. If a man hath land in part of which there is a coal mine open, and he leases the land to one for life, or for years, the lessee may dig for it; forasmuch as the mine is open at the time, and he leases all the land, it shall be intended that his interest is as general as his lease is; that is, that he shall take the profit of the land, and by consequence, of the mine in it.

2d. If the mine were not open, but included in the bowels of the earth at the time of the lease made in such case by leasing of the land, the lessee cannot make new mines, for that shall be waste.

3d. If a man hath mines hid within his land, and leases his land and all the mines therein, then the lessee may dig for them, and therewith agrees 9 *E.* 4, 8, where it is said, that if a man leases his land to another, and in the same there is a mine, (which is to be intended of a hidden mine) he cannot dig for it; but if he leases his land and all mines on it, then although the mines be hidden, the lessee may dig for them.

By an examination of the lease of the 25th July, 1836, it will be found that there is no grant of the *Stone Quarry;* the expressions in the lease are: all their estate and interest, being two-thirds part of and in all that piece or lot of ground within the limits of the farm of *Nicholas Owings,* being in *Baltimore*

County, which lot of ground is called *Fox Rock*; and it is perfectly clear, that the quarry demised to the defendants by the lease of the 11th June, 1840, was not covered by the lease of the 25th July, 1836, unless the quarry was opened at the date of the lease.

The lease of the 11th June, 1840, contains the following description of the quarry granted by *Nicholas Owings* to the defendants; " the granite quarry and quarries situated in *Baltimore* County, near the *Patapsco* river or falls, on land of said *Owings*, called and known by the name of *Fox Rock* or *Fox Rock Quarry*, being the same which was or were lately possessed and worked by *Wood & Co.* and now by *Yager & Co.*;" and these expressions were relied on by the counsel for the appellees, as showing that the quarry was open on the 25th July, 1836. But certainly no such deduction can be drawn from the use of these descriptive expressions. When the lessor, on the 11th June, 1840, said, that the quarry which he was describing had been recently, or a short time ago, possessed and worked by *Wood & Co.* he cannot be understood as meaning that the quarry was opened, and in the occupation of the persons to whom he referred, as long back as the 25th July, 1836, a period of nearly four years.

We have examined the testimony delivered by *Yager*, for the purpose of ascertaining if there was any fact stated by the witness, from which the jury could infer that the quarry in question was open at the date of the lease of 25th July, 1836. But no such fact is supplied by the testimony of this witness. He says, that on the 11th June, 1840, the defendants were the owners of one undivided half part in interest in the lease dated the 25th July, 1836, and he, the witness, of the other half part, and that he and the defendants remained possessed of the demised premises under and by virtue of the lease of the 25th July, 1836, until its expiration in July, 1841; and when the witness speaks of being possessed of the demised premises, we understand him as referring to the lot called the *Fox Rock*, granted by the lease of the 25th July, 1836, and if he could be regarded as alluding to the quarry demised by the lease

upon which this suit is brought, it could not be relied on as indicating that the quarry was open on the 25th July, 1836, as his evidence does not profess to carry the possession of himself and the defendants further back than the 11th June, 1840.

We think that upon the circumstances of the case, as presented by the *first* bill of exceptions, the lease of the 25th July, 1836, must be treated as granting only the superficies or surface of the soil, and conferred upon the lessee no authority to dig for or work the quarry mentioned in the proceedings, and that there was, therefore, no incompatibility between the rights demised by the first lease, and those granted by the lease of the 11th June, 1840. And this being so, it follows that the defendants, as the lessees of the *Fox Rock Quarry*, could not have been impeded or interrupted in the use and enjoyment of that quarry by the lease of the 25th July, 1836.

The pretension of the defendants that they were entitled to a reduction and apportionment of the rent which had become due on the 11th November, 1841, was not sustained by the evidence in the cause, and the court below erred in admitting the testimony offered by the appellees to the *first* exception, and in the instruction which they gave to the jury in the *fifth* exception.

The testimony offered by the plaintiffs below, in the *second*, *third* and *fourth* bill of exceptions, was proposed to be introduced for the purpose of repelling the evidence which had been produced by the defendants, as exhibited in the first bill of exceptions; and as according to the view we have taken of that evidence, it ought not to have been received by the court, and is to be treated as not in the cause. The questions decided by the County Court with respect to the admissibility of the testimony offered by the appellants, have become mere abstract propositions, upon which it is not necessary for this court to express an opinion. Practically, the testimony was properly rejected, for it results from the opinion we have expressed upon this case, that the right of the appellants to recover the sum of $500, as the amount of rent due to them at the period of the institution of this action, was not affected by the lease of the 25th July, 1836.

The judgment of the County Court is reversed on the *first* and *fifth* bill of exceptions, and affirmed upon the *second, third* and *fourth* bills of exceptions.

JUDGMENT REVERSED—PROCEDENDO AWARDED.